UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONICA WAGNER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.
_____/

No. 09-3601-EDL

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Monica Wagner filed this suit pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 400 et seq. Plaintiff filed its motion for summary judgment pursuant to Local Rule 16-5, requesting that the Court remand the matter for payment of benefits or, in the alternative, remand the case for further proceedings. Defendant filed its opposition and cross-motion for summary judgment. Plaintiff did not file a reply. For the following reasons, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion for summary judgment.

## II. BACKGROUND

Plaintiff Monica Wagner was born in 1966. Administrative Record ("AR"), 26. She has a twelfth grade education and is literate. AR 130. Prior to her injury, Plaintiff had been employed as a library page at the Fremont Main Library since 1994. AR 133, 169, 180. Her duties included checking in, shelving, and retrieving books which required pushing carts weighing 15 to 20 pounds. AR 185. Plaintiff's past relevant work included being a sales clerk and a "laborer, stores (warehouseperson)." AR 133, 394.

1    Plaintiff injured her back while working on May 2, 2001. AR 124. It is unclear from the
2 administrative record exactly how she hurt her back. Defendant claims that Plaintiff has given
3 conflicting accounts about the injury because she told one doctor, Dr. Batcheller, that she injured
4 herself bending over to pick up a book, but told another doctor, Dr. Boyd, that she felt pain after
5 pushing a cart filled with newspapers and magazines. AR 271, 186. However, Plaintiff contends
6 that the statements were consistent because she felt pain after picking up a book, and later the same
7 day felt another pain while loading a cart. AR 233-35; see Pl.'s Mot. Summ. J., p. 11. Plaintiff was
8 insured for Title II disability insurance benefits at the time of her injury and through March 2007.
9 AR 121. The Social Security Administration denied Plaintiff's benefit applications initially and
10 upon reconsideration because it found that she had residual functional capacity to perform "light"
11 work activities and was therefore "not disabled". AR 319.

12    Plaintiff saw Dr. Patel at Kaiser about four days after her injury, who recommended modified
13 duty for her, but since modified duty was not available, Plaintiff was placed at complete rest from
14 work. AR 181. She began physical therapy about two or three weeks later, and continued it for six
15 months. AR 181. As of June 20, 2001, Plaintiff still complained of upper back pain and neck pain.
16 AR 183.

17    On July 16, 2001, John Batcheller, M.D. conducted an orthopedic evaluation of Plaintiff in
18 connection with her worker's compensation case. AR 271. During the evaluation, Plaintiff
19 indicated that she had intermittent low back pain aggravated by prolonged sitting, walking, bending,
20 and climbing stairs. AR 272. Supine and sitting straight leg raise tests revealed low back pain. AR
21 273-74. The two tests show the Plaintiff's range of motion; in the sitting position, she could raise
22 her leg 90 degrees bilaterally without evidence of discomfort, whereas in the supine position, she
23 could raise her straight leg to 80 degrees bilaterally with complaints of low back pain. AR 273. Dr.
24 Batcheller diagnosed "low back strain, acute and resolving." AR 273-74. He did not recommend a
25 treatment, but said that Plaintiff appeared to have benefitted from her physical therapy and her need
26 for medication was "rapidly diminishing." AR 274. He felt she was capable of work activities, with
27 a restriction precluding frequent lifting of more than 25 pounds. AR 274. He also recommended
28 that she visit Dr. Patel after about one month on the job, expecting that she could be cleared for
unrestricted work activities by then. AR 274.

2

On December 12, 2001, Dr. K. Chan, M.D. examined Plaintiff's low back which revealed "spasm of the paraspinous muscles" and "minimal retrolisthesis of L4 on L5 without significant degenerative change," but the vertebral bodies appeared generally normal and the joints appeared unremarkable. AR 207. Plaintiff underwent an examination by Clarence A. Boyd, Jr., M.D. on May 8, 2002. Dr. Boyd pointed out some discrepancies in Plaintiff's reports of how she injured herself. AR 186. He detected no abnormal objective findings and determined that she was not a qualified injured worker and not a candidate for vocational rehabilitation. AR 185, 189. He opined that Plaintiff could perform her regular work duties without restriction and did not recommend any treatment. AR 188.

On May 21, 2002, Plaintiff began chiropractic treatment with Dr. Cheri Roberts. AR 240, 257. Dr. Roberts referred Plaintiff for an MRI in August 2002, which revealed a mild loss of disc height with a three to five millimeter protrusion which did not narrow the spinal canal. AR 249. On August 16, 2002, Dr. Roberts diagnosed a lumbar radiculopathy with severe spasm throughout the back and low back pain radiating into the legs. AR 247. She referred Plaintiff to Dr. Barbara A. McQuinn, M.D., whom Plaintiff saw on November 13, 2002. AR 244, 292. Dr. McQuinn diagnosed Plaintiff with lumbar discopathy with radiculopathy and felt that she continued to be "temporarily totally disabled" from working as a library page. AR 292.

On November 18, 2002, Dr. Batcheller re-examined Plaintiff after she returned to him for her workers' compensation claim and concluded that there were no objective findings. AR 263, 268. Dr. Batcheller conducted a second supine test and a sitting straight-leg raise test. AR 266. Plaintiff reacted differently to the two tests, just as she did when she was first tested; she could lift her leg much more without discomfort from the sitting position. AR 273, 266. Also, this time, from the supine position she could only lift her straight leg ten degrees before complaining of pain, whereas previously she could lift her leg eighty degrees from the supine position before complaining of pain. AR 273, 266. Dr. Batcheller agreed with Dr. Boyd that Plaintiff was capable of performing unrestricted work activities. AR 268.

On February 10, 2003, Dr. Batcheller reviewed additional records, including the neurological evaluation by Dr. McQuinn. AR 261-62. Dr. Batcheller's opinion that Plaintiff was capable of working did not change, and he stated that Dr. McQuinn's examination failed to reveal true

objective findings. AR 261-262.  On May 6, 2003, Dr. McQuinn gave work restrictions to Plaintiff for no sitting over 10 minutes at one time, no stair climbing, no walking over 15 minutes, no twisting at the waist, no bending, and no lifting over 5 lbs. AR 287.   She felt that EMG findings were concordant with her clinical findings of a right L5-S1 radiculopathy.  AR 284.

Plaintiff began treatment with Dr. Vincent Baldwin, M.D. on December 5, 2003.  AR 320. Dr. Baldwin diagnosed a cervical strain with severe spasm, radiculopathy, degenerative disk disease, a lumbosacral strain with severe spasm and radiculopathy, anxiety/depression and chronic intractable pain syndrome.  AR 327.  Dr. Baldwin indicated in his progress report on October 27, 2004, that he did not believe further chiropractic treatment would provide any significant long-lasting effects.  AR 325.  He recommended acupuncture and stated that he "[did] not see [Plaintiff] returning to her employment as a library page."  AR 325.

On February 13, 2006, after Plaintiff appeared with counsel at a hearing before Administrative Law Judge Steven Berlin.  ALJ Berlin issued a decision finding Plaintiff not disabled.  AR 28.  Although he found that she could not do past relevant work, she could do a significant number of unskilled light and sedentary jobs existing in the national economy, such as being a ticket seller or order clerk.  AR 35.  Plaintiff appealed the hearing decision, and the Appeals Council granted the request for review, vacated and remanded the case back to the ALJ and mandated that the ALJ obtain a medical expert and refer Plaintiff for a consultative mental health examination.  AR 64, 65, 69.  One of the Appeal Council's concerns was the conflicting opinions between Dr. McQuinn and Dr. Batcheller.   AR 72.

At a May 7, 2007 supplemental hearing, Judith A. Willis, M.D., M.Ed, a Board-certified psychiatrist and neurologist, testified as an impartial medical expert witness that there was not a "real significant pathology."  AR 387.   Dr. Willis testified that Plaintiff's residual functional capacity ("RFC")  would allow for her to lift and carry 50 pounds occasionally and 25 frequently, with no limits on sitting or standing, no limits on climbing, balance, kneeling, crouching, and crawling.  AR 289.

On September 26, 2007, the ALJ denied the claim on remand.  He found that while Plaintiff had some severe impairments, she still had RFC to work. AR 24-25.  On June 11, 2009, Plaintiff's request for review of the ALJ's decision was denied, and the ALJ's decision became the final

decision of the Commissioner. AR 7. On November 5, 2009, Plaintiff requested judicial review of the ALJ decision pursuant to 42 U.S.C. § 405(g). On January 21, 2010, Plaintiff filed this motion for summary judgment. Dkt. #14. On February 22, 2010, Defendant filed a cross-motion for summary judgement and opposition to Plaintiff's motion for summary judgment. Dkt. #17.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to the question of whether the findings of fact in the decision are supported by substantial evidence or were based on legal error. 42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion; it is "more than a mere scintilla but less than a preponderance." Id.; see also, Richardson v. Perales, 401 U.S. 389, 401 (1971); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

To determine whether substantial evidence supports the ALJ's decision, courts review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. Sandgathe, 108 F.3d at 980 (quoting Andrews v. Shalala, 64 F. 3d 1035,1039 (9th Cir. 1995.) Where evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The trier of fact, not the reviewing Court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for that of the ALJ. Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9 Cir. 1992). An ALJ's decision will not be reversed for errors that are harmless. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

### A. Definition and Determination of Disability

To qualify for disability insurance benefits, Plaintiff must demonstrate that she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's determination of disability follows a five-step sequential evaluation process. 20

C.F.R. § 404.1520 (2009); see Reddick, 157 F.3d 715, 721. If the Social Security Administration ("SSA") can find that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step. 20 C.F.R. § 404.1520. First, the SSA must look to the claimant's work activity, if any; if the claimant is doing substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). Second, the SSA must consider whether the claimant suffers from a severe impairment or combination of impairments which has lasted or is expected to last twelve months or end in death. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the SSA considers the severity of the impairments; the claimant is disabled if he or she has an impairment that meets or equals one of the listings set forth in 20 C.F.R., part 404, subpart P, appendix 1, which sets forth impairments whose level of severity conclusively establishes disability, irrespective of any vocational factors. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the SSA considers the residual functional capacity (RFC) and past relevant work; if the claimant can still do past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, the SSA again considers the RFC and age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).

### B.     Credibility.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible as part of the five-step disability determination, an ALJ must engage in a two-step process. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of the underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). Next, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999)

### C.     Final ALJ Decision

In his final decision, the ALJ found that: (1) Plaintiff has not engaged in substantial gainful activity since May 2, 2001; (2) Plaintiff's "severe" impairment is mild degenerative disc disease, lumbosacral spine, with a history of acute lumbosacral strain, and that the record is insufficient to show lumbar radiculopathy; (3) Plaintiff has no impairment or combination of impairments meeting or equaling in severity any impairment set forth in the Listing of Impairments found at 20 C.F.R., Part 404, Subpart P, Appendix 1; and (4) Plaintiff retains the following residual functional capacity (RFC): she can lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk for about 6 hours in an 8-hour work day, and sit for about 6 hours on an 8-hour work day. AR 17, 21, 22, 24. The ALJ found that she cannot perform more than occasional stooping, cannot engage in repetitive reaching, and must be able to alternate sitting and standing about every 30 minutes during the work day to relieve pain and discomfort. AR 22, 24. The ALJ found no other non-exertional limitations, and that this RFC was compatible with a limited range of "light" work activities. AR 22, 24.

The ALJ therefore concluded that Plaintiff was "not disabled" at the fourth sequential step, on the ground that she failed to meet the burden of showing that her medical impairment precludes her from doing her past relevant work as a sales clerk. AR 23. In the alternative, the ALJ found the Plaintiff "not disabled" at the fifth sequential step because even if she could not do any of her past relevant work, the ALJ found that she could do a significant number of unskilled light and sedentary jobs existing in the national economy (e.g., ticket seller and order clerk). AR 23.

In determining Plaintiff's impairment, the ALJ put less weight on Dr. McQuinn's opinion than on those of Dr. Batcheller (the two had conflicting opinions regarding the evidence supporting a finding for lumbar radiculopathy) because the ALJ found that Dr. McQuinn admitted to misreading test results after Dr. Batcheller's finding, which suggested bias to assist Plaintiff on her workers' compensation claim, and because Dr. McQuinn accepted Plaintiff's subjective complaints at face value. AR 20. The ALJ, relying on the testimony of Dr. Batcheller and Dr. Willis (the ALJ's impartial medical expert witness), concluded that the medical evidence did not show lumbar radiculopathy but did show "degenerative disc disease, lumbosacral spine (mild), with a history of

7

acute lumbosacral strain." AR 20-21. In determining the extent to which Plaintiff's ability to do basic work activities had been compromised, the ALJ considered, among other factors, Plaintiff's experience of subjective symptoms in the context of her credibility. AR 17. In assessing Plaintiff's credibility, the ALJ considered her medical history as well as the location and intensity of her symptoms, her medication and possible side-effects, her daily activities, and the consistency of her statements with other information in the case record. AR 17.

Even though the ALJ already stated that the objective medical evidence was not strong, he also found Plaintiff's allegations of more restrictive symptoms not credible for five specifically enumerated reasons: (1) the discrepancies in Plaintiff's reported history of injury; (2) her non-compliance with recommended medical treatment; (3) the different reactions to the sitting and spine straight-leg raising tests; (4) changes in her reported symptoms when seen by Dr. Batcheller the second time; and (5) the workers compensation "litigation factor," which creates secondary gain for greater symptoms. AR 18-22.

## IV.   DISCUSSION

Plaintiff argues that the ALJ's determination of disability at the fourth step of the sequential evaluation – that Plaintiff could perform her past work as a sales clerk or other alternative work in the national economy – should be reversed because it was a legal error to reject the credibility of Plaintiff's subjective testimony and to fail to discuss the opinion of Dr. Cheri Roberts, Plaintiff's chiropractor, who diagnosed her with lumbar radiculopathy with severe spasm throughout the back and low back pain radiating into the legs. More specifically, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for its adverse credibility findings against her.

### A.   Credibility of Plaintiff in Disability Determination

As described above, the ALJ applied a five-step sequential evaluation in determining disability. AR 16; see 20 C.F.R. § 404.1520. The first three steps of the evaluation are not in dispute here, since the ALJ found that Plaintiff did have a severe, medically determinable impairment.[1] AR 21. Although the ALJ found that the objective medical evidence in this case was

---

[1] The ALJ agreed with Plaintiff that there is some underlying impairment. AR 22. At step four of the evaluation, he concluded that Plaintiff could no longer work as a library page or do work requiring repetitive reaching and stooping more than occasionally. AR 22. However, he did not consider Plaintiff disabled because she can do "other work," as provided for under step 4. AR 22.

8

not strong, he found at step two some objective evidence that accounts for at least some of her symptoms.[2] AR 18. The Plaintiff disputes the ALJ's disability finding at the fourth step because the ALJ discounted Plaintiff's testimony as not credible in determining her RFC. See Pl. Mot., p. 10-12. Since the ALJ found objective medical evidence of the underlying impairment which could reasonable be expected to produce the pain or other symptoms alleged, and he found no evidence of malingering, the ALJ could only reject Plaintiff's testimony about the severity of her symptoms by offering specific, clear and convincing reasons supported by substantial evidence for doing so.

The ALJ may consider the following factors in determining credibility: reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. Thomas v. Barnhart, 278 F.3d at 958-59. Also, the Secretary issues Social Security Rulings ("SSR") to assist ALJs in making their findings. See Bunnell, 947 F.2d at 346. Although SSR are not published in the federal register and do not have the force of law, courts give deference to the Secretary's interpretation of its regulations. Id. at 346; see also Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This Court defers to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations."). SSR 95-5p states that "[I]n instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the

---

[2] For example, an MRI taken in December 2001 revealed "minimal retrolisthesis of L4 and L5 without degenerative change." AR 207. An MRI taken in August 2002 revealed a mild loss of disc height with a 3-5 mm protrusion and a mild left lateral recess and proximal foraminal encroachment, but the protrusion did not narrow the spinal canal. AR 249.

9

individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies." As listed above, the ALJ stated five reasons for finding that Plaintiff's allegations of symptoms more restrictive than the objective medical evidence were not credible.

### 1. Discrepancies in Claimant's Reported History of Injury

The ALJ first pointed to discrepancies in Plaintiff's statements as to how she injured herself. AR 18. Although Plaintiff told Dr. Batcheller she injured herself when she felt a sharp pain as she bent over to pick up a book, she told Dr. Boyd that she felt pain after pushing a cart. AR 186. Plaintiff contends that her statements are consistent because, as she indicated at her first visit to Kaiser on May 8, 2001, she first felt pain after picking up a book and then later on the same day felt another pain while loading a cart. See Pl. Mot., p. 11; see also AR 233-235. Defendant claims that there is no mention in the Kaiser report that she was handling carts. However, the reports show that Plaintiff reported feeling pain both while bending down and later pushing a cart. AR 233-235; but see AR 186 (Dr. Boyd pointing out inconsistency in Plaintiff's reports of pain when taking books from bottom shelf, as opposed to working with carts or handling newspapers or magazines, but also noting that her testimony consistently shows no abnormal or extreme motion to her lower back). Although inconsistency in claimant's testimony is a factor to consider, the first reason supporting the ALJ's credibility finding (an inconsistency in Plaintiff's statements as to how she injured herself) was not sufficiently supported by substantial evidence because her statements that she felt pain both while bending over to pick up a book and later while pushing a cart are not necessarily inconsistent.

### 2. Non-Compliance with Recommended Medical Treatment

Second, the ALJ made an adverse credibility finding because he found that Plaintiff was not compliant with recommended medical treatment that would have reduced pain. AR 19 ("Basically, she has refused all treatment except that which has only short-term benefit (chiropractic manipulations, massage, and 'cupping', each time because of one excuse or another."), AR 22. Although Plaintiff did use a Lidoderm patch for pain while it was covered by her workers' compensation coverage (AR 411-12), Plaintiff claims that she could not take prescribed pain medications such as Vicodin, Naproxsyn, and Choline Mag Trisalicylate because they bothered her stomach. See Pl. Mot., p. 11; AR 411, 168. She also did not take a muscle relaxant because it upset

and burned her stomach.[3] AR 168, 414. She also refused recommended acupuncture due to her fear of needles, even though Dr. Baldwin was "pleading" with her to do so (AR 322) and instead received acupunctural "cupping." AR 411-412. Plaintiff did not even take Tylenol because she claimed it was "not strong enough," despite her claimed inability to take anything else. AR 411.

Plaintiff contends that the ALJ cannot reject a claimant's credibility when it is explained by the presence of adverse side effects or lack of insurance coverage, citing Carmickle v. Commissioner of SSA, 533 F.3d 1155, 1162 (9th Cir. 2008) ("though a conservative course of treatment can undermine allegation of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment"). In Carmickle, the claimant refused to take a kind of pain medication because of "intolerable" side effects, but he indicated that he would take a different prescribed pain medication. Id. at 1162. However, his insurance did not cover the medication he preferred to take. Id. Further, Mr. Carmickle's doctor noted in support of Plaintiff's decision that the less conservative medication had "addiction potential or intolerable side effects." Id. The Carmickle court found that he had a "good reason" such that his minimal treatment regime was not a proper basis for finding him non-credible. Id. In contrast, here, Plaintiff refused to take about five or six different pain medications due to some stomach discomfort, while refusing Tylenol as not strong enough. AR 414-15. She also refused to take muscle relaxants as they bothered her stomach. AR 414. Further, Plaintiff refused to get acupuncture treatment because she was afraid of needles. AR 415. Unlike the Plaintiff in Carmickle, Plaintiff does not allege that all of the pain medications would have intolerable side effects or that she was afraid of potential addiction. In further contrast to Carmickle, where the plaintiff's treating doctor agreed that the plaintiff had good reasons for his decision not to take certain medications, here Dr. Baldwin characterized Plaintiff's purported inability to take any medications as "bizarre." AR 322.

The ALJ reasonably agreed with the State agency medical consultant's comment regarding Plaintiff's refusal of pain medication: "severe pain . . . usually proves to be very motivating to most

---

[3] It is unclear whether the muscle relaxant was prescribed or recommended. In Plaintiff's Disability Report Appeal she listed it under Prescribed Mediation by Dr. McQuinn, but in her deposition she suggests that the doctor "asked" or "suggested" muscle relaxants.

11

people." AR 318. Since she was not willing to receive acupuncture or take several prescribed pain medications or muscle relaxants due to stomach discomfort, the ALJ found that the credibility of Plaintiff's claims of debilitating pain was undermined. Because the ALJ pointed to clear and convincing reasons, supported by substantial evidence, in concluding that Plaintiff did not have "good reasons" for refusing her doctors' recommendations, it was reasonable for the ALJ to also conclude that her rejection of the more aggressive treatment undermined her credibility. Therefore, this reason for the ALJ's credibility finding is supported by substantial evidence.

### 3. Difference in Sitting Versus Supine Straight-Leg Raising Tests

The ALJ found that the results from the supine and straight-leg raise tests undermined Plaintiff's credibility because Plaintiff reacted differently to the straight-leg and the supine test, and because the medical opinion on these tests was prepared, not for treatment purposes, but instead for her workers' compensation claim. AR 18, 266. Plaintiff had also reacted differently to the two tests in 2001, prior to her re-examination in November 2002 for her workers' compensation claim. AR 273. There were no objective anatomical or physiological findings that explained Plaintiff's reactions. AR 266, 273. Plaintiff contends that she reacted differently to the supine test and the straight leg raise test because the supine test is more sensitive and therefore the disparate response is not necessarily an anomaly. See Pl. Mot., p. 11. However, Plaintiff presented no medical evidence supporting the different results of these two tests for the ALJ to consider, and it was within the ALJ's power to resolve conflicts and ambiguity in the evidence (or absence of evidence) against Plaintiff on this issue. Therefore, the Court finds that the ALJ's credibility finding on this issue is supported by substantial evidence, and the Court will not second guess it.

### 4. Unexplained Changes in Plaintiff's Reported Symptoms and Workers' Compensation "Litigation Factor"

The ALJ'S fourth and fifth reasons for his adverse credibility finding against Plaintiff are related. The ALJ found Plaintiff's credibility undermined because of unexplained changes in her reported symptoms when seen by Dr. Batcheller the second time on November 18, 2002. AR 18. Dr. Batcheller noted that Plaintiff's reported symptoms had spread to her neck, shoulders, and entire back, but he was unable to find any abnormalities with Plaintiff's cervical spine or any explanations for the emergence of the new complaints. AR 264-265, 268. The increased symptoms, combined

with the "litigation factor," which the ALJ stated promotes secondary gain for greater symptoms, led the ALJ to question Plaintiff's credibility. AR 22. Plaintiff saw Dr. Batcheller in connection with her workers' compensation claim, and the ALJ therefore found that the November 2002 medical opinion from Dr. Batcheller was not prepared for treatment purposes. AR 18, 261.

The ALJ may consider the purposes of obtaining medical opinions. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.1996) (upholding the ALJ who found a doctor's report untrustworthy because it was obtained solely for the purposes of the administrative hearing, varied from his own treatment notes, and was worded ambiguously). However, the ALJ did not find that Dr. Batcheller's opinion would have been different had the opinion been obtained for treatment. Plaintiff argues that the ALJ cannot doubt claimant's credibility simply because she was filing for workers' compensation benefits at the time the medical opinion was given. See Pl. Mot., p. 12. However, the ALJ's negative credibility finding is supported by a clear and convincing reason – that Plaintiff's symptoms inexplicably changed when visiting Dr. Batcheller for her workers' compensation claim – which is supported by substantial evidence that she did not complain of the same symptoms the first time Dr. Batcheller saw her and Dr. Batcheller did not have any objective findings or find any explanation for the change. AR 264, 268. The Court has no authority to second guess the ALJ's finding on this issue.

In conclusion, although at least one of the ALJ's reasons for questioning the Plaintiff's credibility does not seem to be a clear and convincing reason supported by substantial evidence, his other reasons are sufficient to discredit Plaintiff's credibility and support the ALJ's determination, and ALJ's decision will not be reversed for errors that are harmless. See Batson v. Commissioner of the Social Securities Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) ("[I]n light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed ... was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible."). Thus, the ALJ has providedsufficient clear and convincing reasons, supported by substantial evidence, to support his adverse credibility finding.

**B.     Opinion of Dr. Cheri Roberts in Disability Determination**

Plaintiff also contends that the ALJ did not provide any reasons for rejecting the opinion of Dr. Cheri Roberts, Plaintiff's chiropractor. See Pl. Mot., p. 13. Both Plaintiff and Defendant agree that chiropractors are not "acceptable medical sources" for evidence of impairment under 20 C.F.R. § 404.1513(d)(1). See Pl. Mot., p. 13; see also Def. Opp., p. 8. However, Plaintiff contends that the ALJ still should have given Dr. Robert's opinion appropriate weight, relying on Social Security Ruling 06-3p. See Pl. Mot., p. 13. Defendant persuasively counters that the ALJ was not required to consider Dr. Robert's opinion because her opinion is an "other source" under 20 C.F.R. § 404.1513(d)(1), which states that the ALJ "may" also use evidence from other sources to show the severity of the claimant's impairment. See SSR 06-3p ("In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources' . . . . to show the severity of the individual's impairment and how it affects the individual's ability to function."); Kottke v. Astrue, 2008 U.S. Dist LEXIS 73329, *14-15, n.1 (C.D. Cal. 2008) ("The ALJ was not bound to accept a [RFC] assessment rendered by a chiropractor . . . to do so would blur the line between the type of evidence which may be considered from acceptable medical sources, as against evidence from other sources," but also stating – without explanation or analysis – that 20 C.F.R. § 404.1513(d) contains a "requirement" that evidence from "other sources" be considered).

Under SSR 06-03p, "although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Here, the ALJ decision does not discuss Dr. Roberts in any depth, but simply mentions that Plaintiff saw Dr. Roberts after seeing medical doctors and that the chiropractor was unsuccessful in treating the claimant's symptoms. AR 18.

Defendant contends that Dr. Robert's opinion did not materially affect the ALJ's decision, and explanation of the weight given to the opinion is only required when "such opinions may have an effect on the outcome of the case." See SSR 06-03p. Dr. Robert's progress reports cover the period from May 3, 2002 to October 18, 2002. AR 240. She diagnosed Plaintiff with Cervical

Spine Sprain/Strain, Lumbar Radiculopathy, Lumbar Joint Dysfunction, and Neuralgia. AR 244, 254. Dr. Roberts referred Plaintiff to Dr. McQuinn, who also found lumbar radiculopathy. AR 245. However, the diagnosis conflicted with Dr. Batcheller's conclusion that there was no support for a finding of lumbar radiculopathy. AR 19, 268, 274. Dr. Batcheller's opinion was consistent with Dr. Boyd's, who found that patient's symptoms were not substantiated by significant objective findings. AR 184-5, 267. Medical expert Dr. Judith A. Willis also agreed with Dr. Batcheller that lumbar radiculopathy did not exist. AR 287.

As explained above, the ALJ provided clear and convincing reasons, supported by substantial evidence, for why he gave Dr. Batcheller's opinion (consistent with Dr. Willis') more weight than Dr. McQuinn's (consistent with Dr. Roberts). Because the ALJ gave Dr. Batcheller's conclusions more weight and had clear and convincing reasons supported by substantial evidence for doing so, Dr. Robert's opinions would not have sufficiently outweighed Dr. Batcheller's to affect the ALJ's decision. The ALJ did not need to explain the weight given to Dr. Robert's opinion because her opinion would not have an effect on the outcome, since the ALJ explained why he relied on Dr. Willis' and Dr. Batcheller's opinions instead. Thus, there is substantial evidence to support the ALJ's decision and his failure to explain why he discredited or otherwise did not rely on Dr. Roberts' opinion is not a reason for remand.

## V.    CONCLUSION

For all of the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment requesting reversal of the ALJ's decision and remand for benefits, and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: April 26, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge